# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL SAVOKINAS, | |
| Plaintiff, | CIVIL ACTION NO. 3:07-CV-2311 |
| v. | (JUDGE CAPUTO) |
| BOROUGH OF AVOCA, and EDWARD LUKOWICH, in his own Individual Capacity, | |
| Defendants. | |

## MEMORANDUM

Presently before the Court are Defendant Borough of Avoca's ("Avoca") Motion for Summary Judgment and Defendant Edward Lukowich's ("Lukowich") Motion for Summary Judgment. (Docs. 77, 81). For the reasons discussed below, both Defendants' Motions will be granted in part and denied in part. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

Plaintiff Michael Savokinas ("Savokinas") joined the Borough of Avoca's police force as a part-time patrolman some time in 1992 (Savokinas Dep. 16:3-16:5, Sept. 3, 2009). In either late 1995 or early 1996, Savokinas became a full-time police officer with Avoca; he left full-time employment with Avoca in 1997. (Savokinas Dep. 22:6-10.) Upon leaving his full-time employment with Avoca, Mr. Savokinas became a police officer for D&H Railroad ("D&H"). (Savokinas Dep. 23:22-24.) Mr. Savokinas continued his part-time employment with Avoca while he was working for D&H. (Savokinas Dep. 68:14-18.)

In January 2006, Savokinas resigned from the Avoca police department along with

several other police officers. (Savokinas Dep. 94:5-95:5.) Mr. Savokinas presented the borough council and the mayor of Avoca with a resignation letter at a council meeting in January of 2006. (Savokinas Dep. 94:5-22.) The letter outlined several complaints that Plaintiff and the other resigning officers had with the practices of the Avoca police department, including scheduling problems that resulted in certain shifts going unmanned, failure of some officers to wear proper uniforms, and improper use of police vehicles. (Doc. 82, Ex. A.)

Savokinas alleges that his complaints about the Avoca police department led to a backlash of retaliatory harassment by the remaining police officers, including the chief of police, Defendant Lukowich. Mr. Savokinas claims that he was followed at night and that his wife was followed by marked police cars. (Savokinas Dep. 166:14-167:1, 171:2-16.) Mr. Savokinas' brother-in-law, a chiropractor, had his business targeted by police harassing his patients with parking tickets and erecting unauthorized "no parking" signs. (Savokinas Dep. 170:4-172:21.) He also testified that he was personally being harassed by the police officers. (Savokinas Dep. 169:14.) The police officers also circled his family's pizza restaurant, which is not in Avoca's jurisdiction, with marked police cruisers. (Savokinas Dep. 174:6-15.)

On April 17, 2006, the Avoca police, including Defendant Lukowich, arrested an employee of Savokinas' family's restaurant, Ryan O'Malley, allegedly in an attempt to "set-up" Savokinas and arrest him for dealing drugs out of his family's restaurant. (O'Malley Dep. 21:1-6.) O'Malley testified in his deposition that Lukowich wanted O'Malley to "get Mike Savokinas in trouble by facilitating rumors that he's a drug dealer." (O'Malley Dep. 16:4-6.) O'Malley says that he never heard or saw Plaintiff doing or selling drugs. (O'Malley Dep. 21:14-22:3.) Upon being released from custody, O'Malley told Savokinas that he had been

arrested by the Avoca police and that Defendant Lukowich was trying to fabricate charges against Savokinas for dealing drugs. (Savokinas Dep. 162:17-24.)

Savokinas also claims that Lukowich was spreading rumors to other members of the community that Savokinas was a drug dealer. In 2004 or 2005, Plaintiff alleges that he was told by Lena Angelella that Defendant Lukowich had claimed that Savokinas was a drug user and dealer. (Savokinas Dep. 57:5-58:5.) Plaintiff also says that members of the community would regularly approach him as he was running errands and inform him that Defendant Lukowich was saying that Savokinas had resigned from the Avoca police department because he was a drug dealer and was going to be arrested. (Savokinas Dep. 176:21-177:24.)

In January 2008, Savokinas left his job with D&H after being elected to the position of Luzerne County Sheriff. (Savokinas Dep. 31:4-6.) According to Savokinas, the drug allegations that were spread by Lukowich caused him to spend considerably more on his campaign to become sheriff than would have been necessary without the allegations. (Savokinas Dep. 42:2-43:7.)

On January 9, 2008, Plaintiff filed an Amended Complaint alleging violations of 42 U.S.C. § 1983 by Avoca and Lukowich for retaliation against exercise of free speech (Count I) and Abuse of Official Power (Count II), Negligent Supervision against Avoca (Count III), False Light and Defamation against Avoca and Lukowich (Count IV), and violation of § 1983 against Avoca for failure to train (Count V).

On June 27, 2008, this Court issued a Memorandum and Order that dismissed Counts I, II and V, to the extent they sought punitive damages against Avoca, dismissed Counts III and IV, to the extent they sought monetary damages against Avoca, and

3

dismissed all Pennsylvania remedies claimed in Counts I and II. (Doc. 33.) On October 15, 2009, Lukowich and Avoca both filed Motions for Summary Judgment. (Docs. 77, 81.) Those motions have been fully briefed and are currently ripe for disposition.

## **LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## **DISCUSSION**

**I. Federal Claims**

**A. Municipal Liability**

Plaintiff brings claims of First Amendment retaliation, abuse of official power, and failure to train under 42 U.S.C. § 1983. This statute provides that "[e]very person who, under color of state law, subjects any citizen of the United States to the deprivation of any federal right shall be liable to the party injured." 42 U.S.C. § 1983.

Municipal liability for the actions of its employees may not be predicated on a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). However, a municipality may be held liable "when execution of a government's policy or custom,

5

whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. Thus, municipal liability may be established by showing policy or custom. *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007).

There are three (3) instances when the constitutional tort of a municipal employee meets this standard. *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005). First, a municipality is liable when its employee acts pursuant to formal government policy or standard operating procedure long accepted within the government entity. *Id.* (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989)). Second, a municipality is liable for the actions of an employee when the employee has final policy-making authority, rendering his behavior an act of government policy. *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)). Finally, a municipality is liable for the actions of its employee when an official with authority has ratified the unconstitutional actions of the subordinate, rendering the action official. *Id.* (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

The key question under the second theory of liability is whether the individual whose decisions are at issue is a final policy-maker, which is a question of state law. *McGreevy*, 413 F.3d at 368. This Court has previously found on several occasions that a police chief from a Pennsylvania municipality may be a final decision-maker for purposes of municipal liability. *O'Malley v. Lukowich*, No. 3:08-cv-0680, 2008 WL 4861477, at *4 (Nov. 7, 2008) (citing *Gallis v. Dickson City*, No. 05-0551, 2006 U.S. Dist. LEXIS 72091, at *23 (M.D. Pa. Oct. 3, 2006)). If made by a final policy-maker, even a single decision may expose a municipality to liability by creating official policy. *McGreevy*, 413 F.3d at 367-68.

6

In this case, Plaintiff has presented evidence that Defendant Lukowich was a final policy maker for municipal liability purposes. According to Borough Council President Joseph Satkowski, the police chief had the responsibility to run the police department, supervise the police officers and implement procedures such as evidence handling. (Satkowski Dep. 34:5-13.) Plaintiff also has raised several genuine issues of material fact that would suggest that Lukowich made several decisions that might have violated his civil rights, including, but not limited to his attempt to fabricate charges against Savokinas in response to his resignation letter. As such, any Constitutional tort that was committed by Lukowich in his role as final policy-maker for the borough will be fairly imputed to the borough under the second theory of *Monell* liability.

### B. First Amendment Retaliation

"The First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore,* 547 U.S. 250, 256, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006). In order to plead a First Amendment retaliation claim, "a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.,* 463 F.3d 285, 296 (3d Cir. 2006).

Plaintiff has produced sufficient evidence to create a genuine issue of material fact regarding the first prong. Public employees have a constitutional right to speak out on matters of public concern without fear of retaliation. *McKee v. Hart*, 436 F.3d 165, 169 (3d Cir. 2006) (citing *Brennan v. Norton*, 350 F.3d 399, 412 (3d Cir. 2003)). In this case, Plaintiff has shown that he engaged in constitutionally protected speech when he spoke out on the

ongoing problems in the police department, which is a matter of public concern. By engaging in this protected conduct, Plaintiff was entitled to be free from retaliation.

Both Defendants argue that Plaintiff fails to satisfy the second prong of this test because there was no retaliatory action taken directly against Plaintiff. Instead, any retaliatory action was lodged against O'Malley, Plaintiff's wife and Plaintiff's brother-in-law. First, this misstates the record, in which Mr. Savokinas claims that he himself was being harassed or followed on several occasions. Even then, neither defendant has pointed to any case that suggests that retaliatory action must be a direct threat to the plaintiff. The test is whether the retaliatory action taken by the person acting under color of state law would deter an ordinary person from exercising his rights. Certainly, it would make little sense to allow a loophole for threats against a plaintiff's immediate family simply because the plaintiff was not there to witness the threats. Fear of reprisal against one's family is certainly sufficient retaliatory action to satisfy the second prong of the test, as it would likely act as deterrent for the person of ordinary firmness. Furthermore, Plaintiff has presented evidence that Lukowich actively began a course of conduct that was intended to lead to Savokinas' arrest and conviction by trying to set him up for drug possession. This creates a genuine issue of material fact as to whether Lukowich's retaliatory actions would deter a person of ordinary firmness from exercising his constitutional right to engage in free speech.

To establish a causal link, a plaintiff usually must show either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). In this case, Savokinas claims that the alleged retaliatory action occurred almost immediately after his resignation. (Savokinas Dep.

179:17-19). This is enough evidence to create a genuine issue of material fact of an unusually close temporal relationship between the protected speech at the council meeting and the retaliation. As such, there are genuine issues of material fact that would preclude summary judgment at this time. Defendant Lukowich's Motion for Summary Judgment will be denied as to Count I. As noted above, Lukowich was a final policy maker whose constitutional torts can be properly imputed to the borough. Therefore, Avoca's Motion for Summary Judgment will also be denied as to Count I.

### C. Abuse of Official Power

An allegation of abuse of power in violation of the Fourteenth Amendment falls under the rubric of substantive due process. "[T]he substantive due process guarantee protects against governmental power arbitrarily and oppressively exercised." *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998); *see also Fagan v. City of Vineland*, 22 F.3d 1296, 1303 (3d Cir. 1994). The U.S. Supreme Court has explained that executive abuse of power violates substantive due process rights when the behavior "shocks the conscience." *Id*. at 846. The Court stated that "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id*. at 849.

However, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443

(1989)). The First Amendment, as discussed above, provides an explicit textual source of constitutional protection to Plaintiff, so any reliance on the substantive component of the Due Process Clause is misplaced.

The allegations in the Complaint center around the fabrication of drug charges against Savokinas and the deposition testimony reveals that all the actions on the part of Lukowich that give rise to the law suit stem from the alleged retaliation against Savokinas for exercising his right to free speech. As such, there is another explicit constitutional protection that covers the government action alleged in the instant suit. These allegations should be examined under the rubric of First Amendment retaliation jurisprudence and it would be inappropriate to approach them using substantive due process. Therefore, Defendants' motions will be both be granted on the Abuse of Power count.

### D. Failure to Train

In order to prevail in an action for failure to train, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). This custom must be "so widespread as to have the force of law." *Id*. at 404.

Further, a municipality can be held liable on the basis of failure to train only when "that failure amounts to 'deliberate indifference . . . [of the constitutional] rights of persons. . . .'" *Woloszyn v. County of Lawrence*, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted). For a failure to train to amount to deliberate indifference, "it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice

by an employee will frequently cause deprivation of constitutional rights." *Carter*, 191 F.3d at 357. This third prong, stated another way, requires a causal nexus, in that the "identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury." *Woloszyn*, 396 F.3d at 325 (citations omitted).

The Supreme Court has cautioned that "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997). It further stated that "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 410. To that end, "culpability must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." *Id.* at 412. A plaintiff must identify specific training the municipality has failed to provide that directly caused his injury and must demonstrate that this failure reflects deliberate indifference. *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997).

In order to show a failure to train that rises to the level of deliberate indifference, Plaintiff would have to prove that the Avoca was aware that Lukowich was highly likely to violate the First Amendment rights of other police officers and members of the community. Plaintiff would also have to identify the specific training that Avoca failed to implement. Although the record contains numerous instances of situations when the council was warned

11

that Lukowich was a "rogue" police officer who was not following proper protocol, there is nothing to suggest that Avoca was ever alerted to the likelihood that Lukowich would engage in the type of constitutional deprivations that are at issue in the case at bar.

Savokinas testified that he spoke to the council members about the harassment lodged against him *after* he resigned. (Savokinas Dep. 169:11-15.) Without more, Plaintiff cannot meet the strict standard required to make out a claim for failure to train. As a matter of law, Avoca cannot be held responsible for failing to train its police officers not to commit constitutional torts that it could not possibly have seen coming. There was no warning that Lukowich was likely to retaliate against his former friend and co-worker Savokinas, and therefore it cannot be said that Avoca's failure to train its police force rose to the level of deliberate indifference. Therefore, Defendant Avoca's Motion for Summary Judgment will be granted on this count.

## II. State Law Claims

### A. Municipal Liability

The only remaining claims against Avoca after this Court's Order regarding the previous motions to dismiss are for equitable relief on the defamation claim and the negligent supervision and retention claim. The specific equitable relief sought are a "reformation of Plaintiff's employment records" and "letters of good reference."

In Pennsylvania, courts' equity jurisdiction is extremely limited; courts "may exercise only those equitable powers which have been specifically conferred by the legislature." *Bethel Park School District v. Bethel Park Federation of Teachers*, 414 A.2d 145, 147 (Pa. Commw. Ct. 1980) (citing *Commonwealth v. Ryan*, 327 A.2d 351 (Pa. 1974)). This right to

equitable relief must be clear and not subject to speculation, and should be strongly supported by factual averments that demonstrate an entitlement to equitable relief. *Schuykill Trust Co. v. Schuykill Mining Co.*, 57 A.2d 833, 835 (Pa. 1948). Where a Plaintiff has made the necessary showing for equity jurisdiction, "[i]t is elementary that equity has power to act only where there is no adequate remedy at law or where its intervention is necessary to prevent irreparable harm." *Pye v. Commonwealth*, 372 A.2d 33, 35 (Pa. Commw. Ct. 1977) (citing *Borough of Collegeville v. Philadelphia Suburban Water Co.*, 105 A.2d 722 (1954)).

Plaintiff has not pointed to any statutory grant of equity power that would allow courts to exercise equity jurisdiction in a case such as this. Even if this Court assumes that Plaintiff has met the requisite burden for this court to exercise its equitable powers, no evidence has been presented that would show that intervention is necessary to prevent irreparable harm to Mr. Savokinas. No employment record has been produced, so it is unclear to this Court why or how Mr. Savokinas' employment records need to be reformed. In fact, it is unclear on the basis of the record whether Mr. Savokinas' employment record contains any negative evaluations at all. Furthermore, Plaintiff continued to have a successful career in law enforcement after his retirement from Avoca, including being elected to the position of Luzerne County Sheriff. This suggests that there is no irreparable harm being done to Mr. Savokinas as a result of his employment record or his lack of good reference letters from Avoca. As such, it would be inappropriate for this Court to grant equitable relief on either of these claims. Therefore, Avoca's Motion for Summary Judgment will be granted on Counts III and IV.

### B. Defamation Claim Against Lukowich

Defendant Lukowich argues that this Court should enter summary judgment against Plaintiff Savokinas on the defamation/false light claim because he has failed to show special harm and has failed to produce evidence of any publications within the one year statute of limitations. In order to prove a claim for defamation, the plaintiff has the burden of proving 1) the defamatory character of the communication, 2) publication by the defendant, 3) its application to the plaintiff, 4) the understanding by the recipient of its defamatory meaning, 5) the understanding by the recipient that the communication was intended to apply to the plaintiff, 6) special harm resulting from the publication, and 7) abuse of a conditionally privileged occasion. 42 Pa. Const. Stat. Ann. § 8343(a). The statute of limitations for false light and defamation is one year. 42 Pa. Const. Stat. Ann. § 5523.

The term "special harm" is defined as actual damages that are economic or monetary losses. *Pennoyer v. Marriott Hotel Services, Inc.*, 324 F. Supp.2d 614, 618 (E.D. Pa. 2004). However, in Pennsylvania, a plaintiff may succeed in a defamation action without proving special harm if the words spoken constitute slander per se. *Id.* Slander per se is broken into four categories: words that impute 1) a criminal offense, 2) loathsome disease, 3) business misconduct, or 4) serious sexual misconduct. *Id.*

Savokinas has clearly produced evidence on the record that Lukowich spoke words that are imputed to mean that Savokinas has committed the criminal offense of selling or using drugs. As such, Savokinas has shown defamatory communication that constitutes slander per se, thereby obviating the need for proving special damages. As such, he has met his burden to prove a claim for defamation against Lukowich.

14

The two specified accounts of Lukowich making defamatory statements against Savokinas occurred outside the one-year statute of limitations; Lukowich's comments to Angelella happened in 2004 or 2005, and the comments made to Ryan O'Malley were made at the time of his arrest in April, 2006. This suit was commenced on December 26, 2007. However, Plaintiff Savokinas testified that members of the community regularly told him that Lukowich had been spreading rumors that Savokinas had resigned because of his involvement with illicit drugs. (Savokinas Dep., 176:20-177:20).[1] Because it is unclear when these statements were being made, there is a genuine issue of material fact regarding the publication of defamatory comments within the limitations period. The deposition testimony suggests that Lukowich continuously told members of the community that Savokinas was involved in the selling and using of narcotics. If any such communication occurred less than one year before the complaint was filed, Savokinas will not be barred from making out a claim for defamation by the statute of limitations. Therefore, Defendant Lukowich's Motion for Summary Judgment will be denied on this count.

## **CONCLUSION**

For the reasons stated above, the Court will grant in part and deny in part Defendants' Motions for Summary Judgment. An appropriate Order follows.

<u>January 19th, 2010</u>  /s/ A. Richard Caputo
Date       A. Richard Caputo
           United States District Judge

---

[1] The Court recognizes that this testimony, if offered at trial, would likely constitute inadmissible hearsay evidence. However, the Third Circuit Court of Appeals has held that such evidence can be considered on summary judgment, so long as it is capable of being admissible at the time of trial. *Petruzzi IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1234 n.9 (3d Cir. 1993). Savokinas could conceivably call these members of the community to the stand at trial to testify, thus converting the testimony to admissible evidence. As such, it is proper to consider Savokinas' deposition testimony at the summary judgment stage.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL SAVOKINAS,

    Plaintiff

        v.

BOROUGH OF AVOCA, and EDWARD LUKOWICH, in his own Individual Capacity,

    Defendants.

NO. 3:07-CV-2311

(JUDGE CAPUTO)

## ORDER

**NOW**, this  19th  day of January, 2010, **IT IS HEREBY ORDERED** that:

(1) Defendant Lukowich's Motion for Summary Judgment (Doc. 77) is **GRANTED IN PART AND DENIED IN PART** as follows:

    a) The Motion is **GRANTED** on Count II.

    b) The Motion is **DENIED** on Counts I and IV.

(2) Defendant Avoca's Motion for Summary Judgment (Doc. 81) is **GRANTED IN PART AND DENIED IN PART** as follows:

    a) The Motion is **GRANTED** on Counts II, III, IV, and V.

    b) The Motion is **DENIED** on Count I.

                                        /s/ A. Richard Caputo  
                                          A. Richard Caputo  
                                          United States District Judge